**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at LONDON**

**CIVIL ACTION NO. 07-160-DLB**

**MARTY R. SANDLIN**                                                                 **PLAINTIFF**

**vs.**                    **<u>MEMORANDUM OPINION & ORDER</u>**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                **DEFENDANT**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

    **I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Marty Sandlin filed an application for disability insurance benefits (DIB) and social security income (SSI) payments on March 4, 2002, and April 1, 2002. (Tr. 195-97, 669-72).[1] Plaintiff alleges he became unable to work on October 6, 2001. (Tr. 228). He claims disability due to cardiac disease, diabetes, shoulder and leg pain, hearing loss in both ears, difficulty seeing, and depression. (Tr. 228). His application was denied initially and upon reconsideration. (Tr. 178-81, 183-85, 674-78, 681-83). At Plaintiff's request, an

---

[1] Plaintiff filed prior applications for benefits on October 19, 1995. These claims were denied in a decision by an Administrative Law Judge (ALJ) dated April 5, 1999. Although the residual functional capacity (RFC) found by the ALJ in the decision under review differs substantially from the prior RFC, the current decision is consistent with *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) as Plaintiff presented "new and material" evidence to support a revised RFC.

administrative hearing was conducted on November 2, 2004, by Administrative Law Judge (ALJ) Melvin A. Pedilla. (Tr. 689-714). On May 11, 2005, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to DIB or SSI. (Tr. 27-41). This decision became the final decision of the Commissioner when the Appeals Council denied review on March 20, 2007. (Tr. 15-18).

On May 8, 2007, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 12, 13).

## II.   DISCUSSION

### A.   Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*

*v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 28). At Step 2, the ALJ found Plaintiff's coronary artery disease (residuals of coronary artery bypass surgery), diabetes mellitus, depression, and borderline intellectual functioning to be severe impairments within the meaning of the regulations, (tr. 33, 35), but determined his hearing loss, past renal failure, hypertension, vision problems, and right shoulder pain to be non-severe impairments. (Tr. 34).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 33). Specifically, the ALJ concluded that Plaintiff's cardiac condition does not meet or equal the requirements of Listing 4.04 (ischemic heart disease)

because no physician had precluded Plaintiff from taking exercise testing, there was no evidence of anginal discomfort chronically or during exercise stress testing, and the record lacked objective evidence of marked limitation on ordinary physical activity. (Tr. 33).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a reduced range of sedentary work with the additional following restrictions:

> [T]he claimant should not lift more than ten pounds; he must have the option to alternate between sitting and standing at will in order for him to stand and walk no more than two hours a day if he chooses to; he must avoid climbing ladders or working at unprotected heights; more than occasional use of foot controls; he is limited to working inside in a temperature-controlled environment; and he is limited to unskilled, simple, repetitive tasks; low stress jobs with no dealing with the public or fast paced work; and no more than minimal contacts with supervisors and coworkers.

(Tr. 35). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform his past relevant work as a plastic molding machine operator and a truck driver. (Tr. 29, 38).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that, despite Plaintiff's severe impairments, there were a significant number of jobs available to him in the national and regional economies. (Tr. 39). This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 39). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC "would be able to perform approximately 4,000 unskilled, sedentary jobs such as weight tester, microfilm document preparer, and type copy examiner in the regional economy of Dayton/Cincinnati, Ohio." (Tr. 39). Since the positions identified by the VE were representative of a significant number of jobs in the regional and national economies,

the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act. (Tr. 39, 41).

### C. Analysis

Plaintiff advances two arguments on appeal. First, Plaintiff argues that the ALJ's assessment of his RFC was not supported by substantial evidence as the ALJ improperly ignored or rejected the medical opinions of Plaintiff's treating physicians, Drs. Laws and Schoen. Second, Plaintiff contends that the Commissioner did not sustain his burden at Step 5 of the sequential evaluation because the hypothetical question posed to the VE did not accurately reflect the limitations contained in the ALJ's RFC determination. Specifically, the Plaintiff argues that the hypothetical was incomplete because it failed to include a restriction to "repetitive" work. Each of these arguments will be addressed in turn.

### 1. The ALJ Failed to Properly Address the Opinions of Plaintiff's Treating Physicians.

Plaintiff's main argument on appeal is that, by ignoring the medical opinions contained in a letter from Dr. Laws, and failing to adopt all of the limitations included in Dr. Schoen's functional capacity assessment, the ALJ ran afoul of what is commonly referred to in disability proceedings as the "treating physician rule." Under that rule, the opinions of physicians who have treated the claimant receive controlling weight if they are: (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the ALJ concludes that either criterion is not satisfied, he is required to apply the following factors in determining how much weight to give a treating physician's opinion: the length of the treatment relationship and the frequency of

examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ elects not to give controlling weight to a treating physician's opinion, the regulations also require him to provide "good reasons" for his decision. *Id.; see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). These reasons must be based on the evidence in the record and "'be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treading source's medical opinion and the reasons for that weight.'" *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005) (quoting *Wilson*, 378 F.3d at 544). This procedural safeguard "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.

When an ALJ fails to articulate "good reasons" for not crediting the opinion of a treating source, remand is required unless the rejection of, or failure to address, the opinion amounted to harmless error. *Wilson*, 378 F.3d at 547; *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007). Although the Sixth Circuit Court of Appeals has yet to define the full scope of the harmless error inquiry, it has made clear that an ALJ's failure to comply with the procedural requirements of sections 404.1527(d)(2) and 416.927(d)(2) is not made harmless "simply because [the Plaintiff] appears to have had little chance of success on the merits anyway." *Wilson*, 378 F.3d 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977)). Upon review of the record herein, the Court concludes that the ALJ, by overlooking the medical opinions of Dr. Laws, failed to comply with sections 404.1527(d) and 416.927(d), and such error was not harmless.

Therefore, remand is required.

### a.     The Opinions of Dr. Laws

First, Plaintiff asserts the ALJ erred by failing to even acknowledge the medical opinions[2] of Dr. Laws, Plaintiff's treating cardiologist. The opinions at issue are contained in a letter addressed to Plaintiff's counsel and dated June 12, 2003. (Tr. 616). In the letter Dr. Laws states:

> I feel Mr. Sandlin is totally disabled preventing him from any gainful employment because of his severe progressive coronary atherosclerosis, insulin-dependent diabetes, hypertension and chronic renal insufficiency. His heart disease that was documented in March 2002 has progressed a great deal since then. During the initial evaluation in March 2002 he did suffer an anteriorapical myocardial infarction which has limited his ejection fraction. At that time it was 33%. He has had improvement of the ejection fraction since the initial myocardial revascularization but in light of his occluded graft and other severe progressive disease, I do not feel he should be physically stressed in any manner.

(Tr. 616). The Commissioner argues that the ALJ's failure to address Dr. Laws' letter was no more than harmless error as the statements contained in the letter were not entitled to any special deference by the ALJ because (1) they lacked the specificity necessary to be considered "medical opinions" under the Social Security regulations; and (2) they concerned issues, such as determination of disability, that are reserved to the Commissioner.

Under Social Security regulations, medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms,

---

[2] It is not disputed that the ALJ overlooked the letter from Dr. Laws as the ALJ noted in his decision that "there is no . . . medical opinion per Dr. Laws documented in the record." (Tr. 39).

7

diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Under this definition, some of the statements contained in Dr. Laws' letter are plainly "medical opinions" which should have been examined and addressed by the ALJ. Specifically, the statements in the letter qualify as "medical opinions" as Dr. Laws diagnoses Plaintiff's various diseases (severe progressive coronary atherosclerosis, insulin-dependent diabetes, hypertension and chronic renal insufficiency), makes a prognosis which opines upon the severity of Plaintiff's heart disease (characterizing Plaintiff's heart disease as "progressive" and noting that the disease has advanced "a great deal"), and - most importantly - delivers his judgment regarding Plaintiff's physical restrictions ("I do not feel he should be physically stressed in any manner."). The ALJ's complete failure to mention Dr. Laws' letter, and the medical opinions contained therein, plainly violates the terms of sections 404.1527(d)(2) and 416.927(d)(2).

Although the Commissioner is correct to point out that opinions from treating physicians on issues, such as determination of disability, that are reserved to the Commissioner are never entitled to controlling weight or special significance, Social Security Rule 96-5p makes clear that "opinions from any medical source on issues reserved to the Commissioner must never be ignored." SSR 96-5p. Therefore, the ALJ was required to evaluate Dr. Laws' opinion that Plaintiff is "totally disabled" using the applicable factors listed in 20 C.F.R. §§ 404.1527(d), 416.927(d) to determine whether that opinion was medically supportable and/or consistent with the record as a whole, and to explain in his decision the consideration he gave to Dr. Laws' opinion of disability. SSR 96-5p.

8

Notwithstanding the ALJ's failure to address any of Dr. Laws' opinions, the Commissioner argues that reversal is not required as any violation of sections 404.1527(d) and 416.927(d) has been *de minimis*.  Indeed, in *Wilson* the Sixth Circuit contemplates scenarios in which such a violation might be considered harmless.  *See Wilson*, 378 F.3d at 547.  However, *Wilson*'s harmless-error exception is not applicable to this case.  The facts of this case are extremely similar to those in *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742 (6th Cir. 2007).  In *Bowen*, the Sixth Circuit remanded a claim to the Commissioner where the ALJ failed to address, in any manner, the medical opinion of a treating source.  In so holding, the court opined that *Wilson*'s harmless error exception does not apply when an ALJ completely overlooks the opinion of a treating physician.  "[I]nvoking the harmless-error exception here - where the ALJ entirely failed to address the primary treating source's presumptively supportable opinion - risks having the  exception swallow up the rule."  *Bowen*, 478 F.3d at 750.  Therefore, in this case - as in *Bowen* - a remand is necessary so that the ALJ may fully consider and address Dr. Laws' opinions consistent with sections 404.1527(d) and 416.927(d).

### b. The Opinions of Dr. Schoen

Second, Plaintiff argues that the ALJ erred in failing to adopt all of the physical limitations detailed in Dr. Schoen's functional capacity assessment.  In his assessment Dr. Schoen, Plaintiff's treating family practitioner, limited Plaintiff to sitting eight hours a day, standing two hours a day, walking one hour a day, and lifting ten pounds occasionally.  (Tr. 485).  Additionally, he indicated that Plaintiff could not sustain these activities on a full-time basis and could be expected to be absent from work more than five days per month due to exacerbation of his conditions.  (Tr. 487).  Specifically, Plaintiff takes issue with the ALJ's

9

rejection of Dr. Schoen's finding that Plaintiff could not sustain work sedentary work activity on a full-time basis.

In his decision, the ALJ properly identifies Dr. Schoen as a treating physician and adopts many of the limitations contained in Dr. Schoen's functional capacity assessment. However, whether the ALJ's reasons for declining to adopt Dr. Schoen's assessment in its entirety are sufficient to satisfy the procedural requirements of sections 404.1527(d) and 416.927(d) need not be reached.  As the ALJ's failure to address the opinions of Dr. Laws already necessitates remand, we need not determine whether the ALJ's treatment of Dr. Schoen's opinions alone would require remand, or whether the ALJ should have contacted Dr. Schoen, consistent with 20 C.F.R. §§ 404.1512(e), 416.912(e), to resolve any perceived inconsistencies in his functional capacity assessment.  It is sufficient to note that the ALJ's assessment of the consistency and supportability of Dr. Schoen's opinions may change once Dr. Laws' letter is considered consistent with the requirements of sections 404.1527(d) and 416.927(d).

> **2.    The Hypothetical Posed to the VE Accurately Reflected the Limitations Contained in the RFC.**

Plaintiff contends Commissioner did not sustain his burden at Step 5 of the sequential evaluation because the hypothetical posed to the VE did not include a limitation to "repetitive" tasks.  This argument is without merit, as in his hypothetical the ALJ included a limitation to "unskilled" work, which term the Sixth Circuit has recognized is commensurate with a limitation to "simple, repetitive, and routine tasks . . . ." *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, at *4 (6th Cir. 2000) (unpublished decision). Accordingly, the hypothetical posed to the VE was an accurate summation of the medical

limitations and vocational factors included in the RFC[3]. *See Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### III.   CONCLUSION

This matter is remanded for administrative proceedings consistent with this opinion. On remand, the ALJ shall evaluate the medical opinions of treating cardiologist Dr. Laws contained in the letter dated June 12, 2003 (tr. 616), consistent with the requirements of 20 C.F.R. §§ 404.1527, 416.927. Additionally, the ALJ shall consider the subsequent effect Dr. Laws' medical opinions may have on the previous assessment of Plaintiff's RFC and the sequential evaluation of Plaintiff's disability status.

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is hereby **REVERSED**, with this action **REMANDED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Commissioner's Motion for Summary Judgment (Doc. #13) is hereby **DENIED**.

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

---

[3] Although the hypothetical in question was an accurate summary of the RFC of the case under review, that RFC did not take into account Dr. Laws' medical opinions concerning the amount of physical stress Plaintiff is able to withstand. Consequently, when Dr. Laws' opinions are properly taken account of on remand, Plaintiff's RFC may be significantly altered, rendering the hypothetical discussed above inaccurate.

Dated this 24th day of September, 2008.



G:\DATA\SocialSecurity\MOOs\6-07-160-SandlinMOO.wpd

12